**Kenneth Louis POWELL, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 43559.**

Court of Criminal Appeals of Texas.

April 14, 1971.

Rehearing Denied June 2, 1971.

Cutler & Epps, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Jim Skelton, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for forgery of a credit card. The jury assessed the punishment at seven years.

The record reflects that an Enco credit card issued to the Texas Compressor Corporation was used by an unauthorized person to purchase $200 in merchandise from Bill Johnson's Enco service station in Houston. The invoice was signed "B. Burns" and no one by that name was employed by the company or authorized to use its credit cards. The company did not know the card was missing until it was billed for large purchases made with the credit card, which had been lost by an employee of the company. Two witnesses, W. M. Johnson, Jr., and Ernest Thurman, Jr., identified the appellant as the person who made the purchases in question on August 6, 1968.

The appellant first contends that on August 6, 1968, the date of the alleged offense, the penalty for the offense of forgery had been removed by the legislature and the court erred in overruling his motion to quash the indictment. The indictment was returned March 27, 1967, and the trial commenced December 1, 1969.

Article 995 of the Penal Code provides that, "Any person guilty of forgery shall be confined in the penitentiary not less than two nor more than seven years."

■ The appellant contends that this article was inadvertently repealed with the passage of the Texas Education Code. In the section of that Code listing the statutes that were repealed by the act, Article 995 of the Penal Code is listed. The effective date of the Code was September 1, 1969. On September 11, 1969, the legislature reenacted Article 995.

The title to the Texas Education Code is as follows:

"An Act adopting the Texas Education Code, a revision of the general and permanent statutes relating to public education, excluding certain laws relating to higher education; expressly repealing the laws replaced by the code; leaving unaffected certain enumerated local and special laws; leaving unaffected certain laws relating to higher education; declaring the effect of conflicting laws passed at the same session; providing for severability; providing a saving clause; providing an effective date; and declaring an emergency."

The title of the act makes plain that the subject matter of the Code is education, not the forgery penalty in the Penal Code. Since Art. 995 had no connection with anything mentioned in the title of the Code, the provision that repeals Article 995 is at variance with the title and therefore invalid. White v. State, Tex.Cr.App., 440 S.W.2d 660; Ex parte Hayden et al., Tex.Cr.App., 215 S.W.2d 620; Falkner v. Allied Finance Co. (Aus.Ct.Tex.Civ.App., 1965) 394 S.W. 2d 208 (err. ref., n. r. e.); 53 Tex.Jur.2d 106, Sec. 59.

In any event, this offense occurred on August 6, 1968, more than a year before the Texas Education Code became effective.

Article 10 of the Penal Code provides that, "No act or omission can be punished as an offense unless the law making it penal was in force at the time when such act or omission took place." In this case, Article 995, which makes the offense of forgery penal, was in force when the act took place, when the indictment was returned, and when the trial took place, and was not ex post facto because it was never repealed.

Appellant's first ground of error is overruled.

Appellant next contends that the in-court identifications by Johnson and Thurman were inadmissible. Johnson was the dealer of Bill Johnson's Enco and Thurman was an employee at the station.

Clarence Pearce, a special agent employed by Humble, investigated the credit cards issued to Texas Compressor Corporation. He showed Johnson and Thurman a group of from four to eight photographs of white males, including one of the appellant. They were in each other's presence when this was done and both identified the appellant. This was done in January of 1969. Johnson saw him next at the examining trial on February 28, 1969. Thurman did not see the appellant again until the trial on December 1, 1969. Both testified that their identifications were based solely on having seen the appellant on the date of the offense.

The rule is that in-court identifications which have been preceded by a pre-trial identification by photographs will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Smith v. State, Tex.Cr.App., 459 S.W.2d 642; Thames v. State, Tex.Cr.App., 453 S.W.2d 495; Grundstrom v. State, Tex.Cr. App., 456 S.W.2d 92. In this case, both witnesses had ample opportunity to observe the accused under good daytime conditions; all the photographs were of males in relatively the same age group; and there was no showing that the pre-trial identification influenced the in-court identification. And there is no showing whatsoever that the exhibition of photographs was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification.[1]

Appellant's second ground of error is overruled.

There being no reversible error, the judgment is affirmed.

---

1. We recommend that exhibition of photographs be shown to witnesses separately and apart.